IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Joe Hand Promotions, Inc.,

    Plaintiff,

  v.                          Case No. 2:11-cv-377

RPM Management Co. LLC,
et al.,

    Defendants.

OPINION AND ORDER

This is an action brought by plaintiff Joe Hand Promotions against defendant RPM Management Co., LLC, individually and as the alter ego of Ozone Sports Bar, and defendant Mark Lokar. Plaintiff is an international distributor of sports and entertainment programming. Plaintiff alleges that it purchased the rights to broadcast a mixed martial arts match entitled the "Ultimate Fighting Championship 98: Rashad Evans v. Lyoto Machida" ("the Program") shown on May 23, 2009. Defendants allegedly broadcast the program at the Ozone Sports Bar without purchasing a sublicense from plaintiff to do so.

In Count 1 of its complaint filed on May 2, 2011, plaintiff asserts a claim under the Communications Act of 1934, as amended, 47 U.S.C. §605, et seq. In Count 2, plaintiff alleges a violation of the Cable and Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. §553, et seq. Count 3 of the complaint asserts a claim for conversion.

The record indicates that defendants were served with a summons, which was returned executed. After defendants failed to file an answer, plaintiff filed an application for entry of

default.  The clerk entered default on July 11, 2011.  This matter is now before the court on plaintiff's motion for default judgment filed on July 22, 2011.  On October 5, 2011, this court entered an order directing the clerk to mail a copy of plaintiff's motion for default judgment to the defendants via certified mail, and directing the defendants to respond to the motion no later than November 4, 2011.  The certified mail receipts indicate that defendants received this order.  No response to the motion has been filed.

Fed.R.Civ.P. 55(b) governs default judgment.  Once a default is entered, the defendants are considered to have admitted all of the well-pleaded allegations in the complaint.  <u>Ford Motor Co. v. Cross</u>, 441 F.Supp.2d 837, 845 (E.D.Mich. 2006)(citing <u>Matter of Visioneering Construction</u>, 661 F.2d 119, 124 (6th Cir. 1981)).  However, while the well-pleaded factual allegations in the complaint are taken as true when a defendant is in default, damages are not.  <u>Ford Motor Co.</u>, 441 F.Supp.2d at 848.  Where damages are unliquidated, a default admits only defendant's liability and the amount of damages must be proved.  <u>Antoine v. Atlas Turner, Inc.</u>, 66 F.3d 105, 110 (6th Cir. 1995).  Although the court may conduct an evidentiary hearing to determine damages, an evidentiary hearing is not a prerequisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained on the record before the court.  <u>J&J Sports Production, Inc. v. Lukes</u>, No. 1:10 CV 00535, 2010 WL 4105663 at *1 (N.D.Ohio Oct. 18, 2010).

Title 47, §605(a) prohibits the unauthorized interception of radio communications.  That section has been interpreted as outlawing satellite signal piracy.  <u>Cablevision of Michigan, Inc.</u>

v. Sports Palace, Inc., 27 F.3d 566 (table), 1994 WL 245584 at *3 (6th Cir. June 6, 1994). Section 605 permits the aggrieved party to recover actual damages or statutory damages of not less than $1,000 or more than $10,000 for each violation. 47 U.S.C. §605(e)(3)(C)(i)(I) and (II). There are no *mens rea* or scienter elements for a non-willful violation of that section; rather, it is a strict liability offense, and intent is immaterial to liability. Joe Hand Promotions, Inc. v. Easterling, No. 4:08 CV 1259, 2009 WL 1767579 at *4 (N.D.Ohio June 22, 2009)(citing Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1004 (2d Cir. 1993) and Kingvision Pay Per View Ltd. v. Williams, 1 F.Supp.2d 1481, 1484 (S.D.Ga. 1998)).

Where the court finds that the violation was committed willfully and for purpose of commercial advantage or private financial gain, the court, in its discretion, may increase the award of actual or statutory damages by an amount not to exceed $50,000. 47 U.S.C. §605(e)(3)(C)(ii). Section 605 also permits an award of costs and reasonable attorney's fees. 47 U.S.C. §605(e)(3)(B)(iii).

It is illegal under 47 U.S.C. §553(a)(1) to intercept or receive without authorization any communications service offered over a cable system. Section 553 bans the theft of programming directly from a cable system. Id. Under §553, a party may recover actual damages, or, in the alternative, an award of statutory damages for all violations involved in the action in an amount not less than $250 but not greater than $10,000. 47 U.S.C. §553(c)(3)(A)(i) and (ii). This is likewise a strict liability statute. Easterling, 2009 WL 1767579 at *4. Where the court finds that the violation was committed willfully and for purpose of commercial advantage or private financial gain, the court, in its

3

discretion, may increase the award of damages, either actual or statutory, by an amount not more than $50,000.  47 U.S.C. §553(c)(3)(B).  Section 553 also provides for an award of costs and reasonable attorney's fees.  47 U.S.C. §553(c)(2)(C).

Courts have held that when a defendant is liable under both §553 and §605, a plaintiff may recover under only one section.  See Sykes, 75 F.3d at 129; Joe Hand Promotions Inc. v. Orim, Inc., No. 1:10CV00743, 2010 WL 3931108 at *2 (N.D.Ohio Oct. 5, 2010); Joe Hand Promotions, Inc. v. Willis, No. 5:08CV2786, 2009 WL 369511 at *1 (N.D.Ohio Feb. 11, 2009).  In that situation, typically §605 is applied because it allows for a higher recovery.

In awarding statutory damages for non-willful infractions, courts may consider the price a defendant would have had to pay to obtain the right to receive and display a broadcast, and the plaintiff's cost to monitor and investigate its broadcasting rights.  Joe Hand Promotions, Inc. v. Potopsky, No. 1:10-cv-1474, 2011 WL 2648620 at *4 (N.D.Ohio July 6, 2011).  In this case, plaintiff has submitted the affidavit of Joe Hand, Jr., president of Joe Hand Promotions.  Mr. Hand stated in his affidavit that plaintiff is a closed-circuit distributor of sports and entertainment programming.  Hand Aff., ¶ 3.  Plaintiff purchased the rights to the Program, which was broadcast on May 23, 2009. Hand Aff., ¶ 3.  Plaintiffs have also presented the affidavit of Investigator F. Ann Grimm, who was present at the Ozone Sports Bar from 11:50 p.m. on May 23, 2009, to 12:15 a.m. on May 24, 2009. Ms. Grimm stated that she observed a portion of the Program, specifically, the under-card bout between Matt Hughes and Matt Serra, being broadcast on sixteen television screens in the bar. Grimm Aff.; Hand Aff. ¶ 7.  The Ozone Sports Bar was not licensed

4

by plaintiff to show the Program. Hand Aff. ¶ 7. According to the rate card for the Program, the commercial fee which would have been charged for defendants to broadcast the Program was $1,150.00. This was based on the fact that the Ozone Sports Bar had a capacity of 175 people. See Hand Aff., ¶ 8; Grimm Aff. Plaintiff has submitted no information concerning what expenses, if any, it incurred in investigating this particular infraction. Thus, the statutory damages payable under §605(e)(3)(C)(i)(I) and (II) would be $1,150.00.

However, plaintiff argues that it is entitled to enhanced damages under §605(e)(3)(C)(ii) for a willful violation. Conduct is "willful" if it shows "disregard for the governing statute and an indifference to its requirements." Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985). For purposes of §605, conduct is "willful" where there were repeated violations over time. Easterling, 2009 WL 1767579 at *6, n. 2 (citing Cable/Home Communication Corp. v. Network Prod. Inc., 902 F.2d 829, 851 (11th Cir. 1990)). The court may also draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. Id.

In this case, plaintiff has submitted evidence that it would be impossible to mistakenly or accidently intercept the Program. A black box, hotbox or pancake box would have to be installed on a cable television line to allow for the descrambled reception of a pay-per-view broadcast, and the use of a smart card, test card or programming card would have to be installed on a DSS satellite receiver line to allow for the descrambled reception of a pay-per-view broadcast. Other methods of piracy would include a

5

misrepresentation by a commercial establishment that it was a residence for purposes of purchasing a pay-per-view program, the use of an illegal cable drop or splice from an apartment or home near the commercial establishment, or the purchase of other illegal decryption devices or satellite authorization codes. Hand Aff. ¶ 9.

The court observes that defendants failed to appear and defend this action, which alleged willful violations of §605 and §553. Plaintiff also notes that defendants have committed other violations in the past, noting specifically previous judgments entered in this court against defendants in <u>Joe Hand Promotions, Inc. v. RPM Management Co. LLC</u>, No. 2:09-cv-862, 2011 WL 1043574 (S.D.Ohio Mar. 18, 2011)(Sargus, J.)(involving the illegal broadcast of a professional prize fight at the Ozone Sports Bar on March 1, 2008) and <u>Joe Han Promotions, Inc. v. RPM Management Co. LLC</u>, No. 2:09-cv-553, 2011 WL 1043560 (S.D.Ohio Mar. 18, 2011)(Sargus, J.)(involving the illegal broadcast of a professional prize fight at the Ozone Sports Bar on July 7, 2007). Thus, the court finds that there is sufficient evidence that the violations in this case were willful.

Plaintiff must also show that the violation was committed for purpose of commercial advantage or private financial gain. Other courts have held that this requirement is not satisfied where there was no evidence of a cover charge, no evidence that the program was advertised or that food or drink prices were increased, and where the establishments were not filled to capacity. See <u>Lukes</u>, 2010 WL 4105663 at *3 (noting that at the time of broadcast, the bar's capacity was sixty, but only twenty-two patrons were present, there was no cover charge, and the bar had one television); <u>Easterling</u>,

2009 WL 1767579 at *6 (evidence of willful exhibition for financial gain insufficient where there were at most seventy-two patrons present in bar which held up to one hundred and twenty customers, there was no cover charge, and there was no evidence that the event was advertised or that food prices were increased).  However, in each of the previous two actions between plaintiff and defendants filed in this court, enhanced damages in the amount of $20,000 were awarded.  In Joe Hand Promotions, Inc. v. McBroom, No. 5:09-cv-276(CAR), 2009 WL 5031580 at *6 (M.D.Ga. Dec. 15, 2009), the court awarded enhanced damages of $3,300 (three times the amount of the licensing fee of $1,100) even though there was no evidence of repeated violations, that a cover fee was charged, or that the event was advertised, and where the restaurant, which had a capacity of two hundred persons, had eight customers on the night of the broadcast.

Plaintiff argues that the fact that a pirated event is not advertised does not indicate the lack of a purpose to profit from the event, since pirates do not generally advertise the fact that they intend to unlawfully exhibit programming.  Hand Aff. ¶ 15. Mr. Hand stated that, based on his experience, it is uncommon for licensees who legally broadcast programs to increase food or beverage prices to recover the cost of the license.  Hand Aff. ¶ 16.  He also indicated that most pirate establishments do not charge a cover because to do so would defeat their purpose of obtaining a competitive advantage by not charging a cover fee for the event, thereby attracting customers away from licensed establishments.  Hand Aff. § 17.

In this case, the evidence includes three separate head counts of seventy-two, seventy and seventy-eight patrons present at the

7

Ozone Sports Bar while the investigator was there. See Grimm Aff. This was a sizable audience, considering the bar's capacity of 175 persons and the fact that the Program was broadcast around midnight. Also significant is that the establishment had sixteen television screens, all of which were showing the Program. The Ozone Sports Bar, by its very name, advertised itself as a venue for viewing sports events such as the Program at issue in this case. It would be incongruous to argue that a sports bar did not intend to make a profit from food and beverage sales by broadcasting a sporting event which would attract patrons to the bar. The court concludes that there is sufficient evidence that the willful violation in this case was committed for the purpose of commercial advantage or private financial gain. In light of the multiple violations committed by defendants, the court finds that enhanced statutory damages in the amount of $25,000.00 is an appropriate award in this case.

Plaintiff is also entitled to an award of attorney's fees and costs. In this case, plaintiff has submitted an affidavit from counsel claiming $1,300.00 in attorney's fees and $350.00 in costs. The court finds that an award in these amounts is reasonable. Therefore, the court also awards the plaintiff $1,300.00 in attorney's fees and $350.00 in costs.

In accordance with the foregoing, plaintiff's motion for default judgment (Doc. 12) is granted. The clerk shall enter judgment in favor of plaintiff and against the defendants, jointly and severally, in the total amount of $26,650.00, consisting of $25,000.00 in statutory damages for a willful violation of §605, committed with the purpose of commercial advantage or financial gain, $1,300.00 in attorney's fees, and $350.00 in costs.

It is so ordered.

Date: November 7, 2011               _____s/James L. Graham_____
                                     James L. Graham
                                     United States District Judge